## 51569. TALLEY v. THE STATE.

MARSHALL, Judge.

Appellant was convicted of aggravated assault, robbery, and child molestation and sentenced to a total of 50 years in the penitentiary. In his appeal, he enumerates five errors: (1) the general grounds, (2) the identification of appellant by the victim by use of a single photograph prejudicially tainted her identification of him at a subsequent lineup and at trial, (3) the lineup was impermissibly suggestive, (4) two photographs were improperly admitted into evidence, and (5) conflicts in the state's evidence so undermined the testimony of the witnesses as to destroy their credibility.

1. In Enumeration 1, appellant contends that the evidence is insufficient generally as to all three counts and particularly as to the assault and robbery counts. The transcript shows that on the night of July 12, 1975, a 12-year-old girl was spending the night with her 76-year-old grandfather in his house in LaGrange. She testified that in the early morning hours of July 13 she was awakened by a noise and saw a black male hitting her grandfather on the head with a lamp. When the assailant saw the girl, he demanded money and a pistol. She replied they had neither, at which time he attempted to remove a watch from the wrist of her grandfather. When the grandfather resisted, the assailant began to stab him with a knife. He then took the girl into another room and told her to take her panties off and, under threat of the knife,

he molested her. In an effort to avoid further molestation, she suggested that she get the watch from her grandfather and give it to him. She then left the room, obtained the watch from her grandfather and brought it to the assailant who then left. The girl immediately called the police, and was able later to identify the appellant as the assailant by means of a photograph and at a line-up. The grandfather could not identify the assailant but did identify his watch when it was shown to him by policemen. The watch had been recovered by the police from a pawn shop where it had been pawned by appellant. Appellant testified that he had been out drinking on the night of the 12th and was at a friend's house asleep during the early morning when the crimes were actually committed. He stated that he had bought the watch from a stranger during the night of the 12th and had pawned it a day or two later when he became short of cash.

It is appellant's contention that the above evidence is insufficient to show: (a) the commission of *any* of the offenses because the only evidence connecting him with the crimes was the questionable identification by a 12-year-old girl and a watch pawned by appellant which only "looked like" the watch stolen and which appellant may have obtained from a stranger, (b) the commission of aggravated assault because the lamp was not shown to have been used as a deadly weapon, and (c) the commission of a robbery because the watch was taken from the grandfather, not by appellant, but by the girl.

(a) The sufficiency of the evidence as to all three crimes is not diminished by the fact that the identification of appellant by the girl was impermissibly suggested by an improper photograph display (see Division 2, infra) nor by the fact that the watch only "looked like" the grandfather's watch and may have been a different watch and may have been acquired innocently by appellant. "On appeal the evidence must be construed to uphold the verdict, the conflicts must be resolved against the appellant, and if there is any evidence to support the verdict it must be affirmed. *Johnson v. State,* 231 Ga. 138 (1) (200 SE2d 734); *Taylor·v. State,* 128 Ga. App. 13, 14 (195 SE2d 294)." *Hess v. State,* 132 Ga. App. 26, 28 (207 SE2d 580). While the appellant's alibi and explanation of

how he happened to have the watch may warrant the jury's consideration, they do not require the jury to find in his favor where they have no reasonable doubt of his guilt.

(b) As to the conviction of aggravated assault, the evidence is sufficient to show that the lamp was used as a deadly weapon. Appellant was charged with assaulting the grandfather "with a lamp, a deadly weapon in the manner used . . ." A lamp is not, per se, a deadly weapon within the meaning of Ga. L. 1968, pp. 1249, 1280 (Code Ann. § 26-1302). It was, therefore, incumbent on the state to show the circumstances of its use by appellant which made it a deadly weapon. See, e.g., *Williams v. State,* 127 Ga. App. 386 (1, 2) (193 SE2d 633). In this respect, the state's case was weak, though not fatally so. The state did not introduce the lamp into evidence. Nor was the jury informed of the lamp's size, weight or sharpness nor the number of blows struck, the degree of force used, or what portion of the lamp inflicted the wounds. The absence of such evidence resulted in reversal in the *Williams* case, supra, where shoes were allegedly used as a deadly weapon. Here, however, the testimony of the girl who saw the appellant "hitting him [the grandfather] on the head with the lamp," plus the medical testimony and photographs of severe lacerations ("The ear was torn completely in two [sic] in two places.") and bruises were sufficient indication of the severity of the blows to show the lamp was used as a deadly weapon. See *Quarles v. State,* 130 Ga. App. 756 (204 SE2d 467).

(c) As to the robbery, the indictment charged appellant with robbery of property (including the watch) from the girl *and* her grandfather. Therefore, even though the girl actually took the watch from her grandfather, the appellant took the watch from the girl under threat of harm. The evidence was sufficient to support this count of the indictment.

2. Appellant contends that the girl's identification of him was tainted by a prior improper photographic display. Immediately after the offense, the girl gave a description of the assailant to police. She was then shown between 75 and 100 photographs of possible suspects for identification, but could not identify her assailant. After a few days, a police officer went to her house and showed her

a single photograph of appellant from which she made an immediate and positive identification. At a subsequent lineup and during the trial she again positively identified appellant as the man who molested her. Appellant contends that the display of the single photograph was impermissibly suggestive and that both later identifications were tainted by it.

There is no question that the display of the single photograph in this case was impermissibly suggestive. However, as stated in *Payne v. State,* 233 Ga. 294 (210 SE2d 775), the test of whether such identification offends due process is two-fold. "The first inquiry is whether the photographic display was impermissibly suggestive. Only if it was, need the court consider the second question: whether there was a very substantial likelihood of irreparable misidentification." *Payne v. State,* 233 Ga. 294, 299, supra. The test of whether there has been a *"very substantial"* chance of misidentification depends on the totality of the circumstances in each case. See, *Yancey v. State,* 232 Ga. 167 (205 SE2d 282). "[T]he factors to be considered in evaluating the likelihood of mis-identification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Neil v. Biggers, 409 U. S. 188, 199 (93 SC 375, 34 LE2d 401). See also, *Sherwin v. State,* 234 Ga. 592 (216 SE2d 810).

Here the likelihood of misidentification is not "very substantial." During the period of time the appellant molested her, the girl was very close to him, face to face, for a long period of time in a room lighted by early morning sunlight. The appellant wore nothing to hide his face and the girl gave a fresh and relatively accurate identification to police, including his build, his clothes, and a scar on the left side of his face. Her attention level was presumably high as she had no choice but to observe appellant. Her recognition of appellant from the photograph was quick and certain, as were her identifications at the lineup and in court. While the use of

a single photograph or any other suggestive identification procedure should be avoided, we find that its use in this case did not result in a misidentification.

3. Appellant also contends that the lineup was improper in that all the participants were taller and heavier than appellant and that his placement in the center of the lineup made him stand out. Even assuming a primary taint (though appellant's counsel at the lineup registered no objection), the girl's identification of appellant was independently made, and, as discussed in Division 2, supra, does not show a substantial likelihood of misidentification. See, *Payne v. State,* 233 Ga. 294, supra; *Butler v. State,* 226 Ga. 56 (1) (172 SE2d 399); United States v. Wade, 388 U. S. 218, 240-41 (87 SC 1926, 18 LE2d 1149).

4. Two photographs were introduced by the state, one of the scene showing blood on the grandfather's bed, and one of the grandfather showing the nature and extent of his injuries. Both were relevant to determining whether the lamp was used as a deadly weapon and whether or not the assault was aggravated. See, e.g., *Dixon v. State,* 231 Ga. 33 (2) (200 SE2d 138); *Andrews v. State,* 222 Ga. 689 (2) (152 SE2d 388).

5. As pointed out by appellant's counsel during the trial, there were instances in the transcript where testimony of the various witnesses for the state were inconsistent and contradictory, and where witnesses were not able to recall certain details. While such inconsistencies do affect the credit of the witnesses and weaken the state's case, they were minor defects and we cannot declare as a matter of law that the witnesses' testimony was altogether unworthy of the jury's consideration.

*Judgment affirmed. Pannell, P. J., and Evans, J., concur.*

SUBMITTED JANUARY 5, 1976 — DECIDED JANUARY 23, 1976 —
REHEARING DENIED FEBRUARY 11, 1976 —

*Ken Gordon,* for appellant.
*William F. Lee, Jr., District Attorney,* for appellee.