## 64484. WILLIAMS v. THE STATE.

BIRDSONG, Judge.

Michael Paul Williams was convicted of criminal attempt to commit theft by extortion and causing a false public alarm. He was sentenced to five years consecutively on each count, the last five on probation. He brings this appeal enumerating five alleged errors. *Held:*

1. At about 2:00 to 3:00 a. m. on the morning of June 20, 1981 the druggist at Bells Ferry Pharmacy (the only pharmacy open 24 hours a day in the Marietta area) received a telephone call from a person whose voice the druggist concluded was that of a white male. This man stated that a bomb was planted in the drug store and would be detonated remotely by the caller if the druggist did not collect together all the drugs of three certain kinds and deliver those drugs to a designated drop (a point a few hundred feet from the appellant's then current residence). Within the next hour and a half, the same person called three more times, continuing to threaten to bomb the store if the drugs were not delivered as demanded, and assuring the druggist the extorter knew how to do what he threatened. Also, the extorter discussed how the bomb would be disarmed and removed from the store. The deadline set for detonation of the bomb twice passed without any explosion.

Meantime, the druggist notified the police. The police captain in charge of the night watch arrived at the drug store in time to listen in on the last conversation between the druggist and the caller.

Additionally, a part-time cashier for the drug store (as well as an employee at the police station) momentarily overheard one of the conversations between the druggist and the caller. The druggist spoke to the caller for a period in excess of twenty minutes during the time from 2:00 until 4:00 a. m. The police captain overheard a ten-minute conversation at about 3:30 a. m., and the cashier overheard less than a minute of conversation at about 3:00 a. m. Attempts to have the telephone company trace the call were unsuccessful. After the last call at about 3:30 a. m., the druggist wanted to take the drugs to the designated drop off point. However, the police captain obtained a delay pending another call so that another trace effort could be made.

At about 4:00 a. m. while waiting for a call, the druggist and the captain were standing at the door of the pharmacy looking out upon a deserted shopping center parking lot. Both observed a car drive from the area of an adjoining highway slowly across the parking lot. At the front door of the drug store, the car more or less stopped and the driver looked through the door and seemingly saw the druggist and presumably the police officer. The car then proceeded on out of the parking lot away from the area. The police captain thought it was unusual for a car to drive through the parking area (instead of on an adjacent roadway) so slowly and then drive away after the driver apparently observed the police officers. This, in connection with the bomb threat and the extorter's promise to remove the bomb upon delivery of the drugs, prompted the captain to direct one of his patrol officers to follow and investigate the passing vehicle. About a minute later, the captain was asked to come to the place where the car had been stopped and continue the investigation. In another minute (altogether about two minutes after the car passed the drug store), the captain arrived at the stopped vehicle. He asked the driver to identify himself and to explain his activity of driving through the parking area at 4:00 a. m. and not coming in, inasmuch as the drug store was the only nearby business that was open at that time of the morning. The driver gave an explanation in effect that he thought the store was closed, but had been looking for some pain reliever. While the driver was making the explanation, the captain recognized the speaker's voice as that of the person who had made the bomb threat and attempted to extort the drugs.

The driver (appellant Williams) was taken to the police station. There the captain personally prepared a list of statements and questions which he had heard the caller make on the phone. The captain then composed a taped voice lineup by having the appellant Williams and five police officers read the same words from the list and recording the words. Thereafter, the druggist and the cashier

were given the opportunity to listen to the tape recording and each unequivocally and correctly identified the same voice (number 4) as the voice that had made the threatening calls to the drug store. In each instance, this was the voice of appellant Williams.

2. In his first enumeration of error, Williams argues that there existed no grounds of probable cause for his detention and arrest. In the absence of probable cause for his arrest, he asserts the voice identification procedures that followed thereafter were tainted and inadmissible. Thus, Williams argues the trial court erred in failing to suppress the identification evidence.

Because acts of peace officers in detaining and questioning a citizen are necessarily a curtailment of his right to go about his business unmolested, and because investigation and questioning are necessary elements of crime prevention and detection, the exigencies of the situation as they reasonably appear at the time must dictate the extent of intrusion into constitutionally protected areas. Momentary detention and questioning are permissible if based upon specific and articulable facts which, taken together with rational inferences from those facts, justify a reasonable course of inquiry not based on mere inclination, caprice or harassment. An authorized officer may stop an automobile and conduct a limited investigative inquiry of its occupants, without probable cause, if he has reasonable grounds for such action; a founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing. *Brooks v. State,* 129 Ga. App. 109, 111 (198 SE2d 892). The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest simply to shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. Adams v. Williams, 407 U. S. 143, 145 (92 SC 1921, 32 LE2d 612); *Stiggers v. State,* 151 Ga. App. 546, 547 (1) (260 SE2d 413).

That is the factual situation we conclude faced the captain at the time of the momentary detention of the Williams auto. The unusual nature of the driver's acts in driving slowly through the parking lot and driving off when apparently he saw people in the doorway, when these acts were observed in connection with the bomb threat, certainly justified the police in making inquiries as to the purpose of such novel driving at 4:00 a. m. We conclude, therefore, that the stop was justified and lawful. *Anderson v. State,* 123 Ga. App.

57, 61 (179 SE2d 286). Thereafter, when appellant's voice was identified as that of the one making the threatening phone calls, his immediate arrest was called for and certainly appropriate. *Morgan v. State,* 241 Ga. 485, 487 (246 SE2d 198); *Young v. State,* 238 Ga. 548, 549 (233 SE2d 750). We reject this first enumeration of error.

3. In his second enumeration, appellant contends that because of differences in volume, manner of speech and background noises accompanying the six voice samples, his particular segment (the fourth) was singular and thus irreparably suggestive. Moreover, Williams contends that where a conviction is based solely on circumstantial evidence, voice identification is not sufficient to warrant such conviction. See *Henderson v. State,* 209 Ga. 238 (71 SE2d 628); *Patton v. State,* 117 Ga. 230 (43 SE 533).

We reject these contentions on each facet thereof. Appellant does not contest that each identifier had an opportunity to hear the voice of the extorter. Though there are certain differences in the volume and background noises, this indicates only that the voices were recorded at different times and different locations. Each of the identifying witnesses testified that he or she recognized the voice because of the peculiarities of the voice and not because the voice was singularly isolated by its setting. The jury was able to hear the tape played and judge for itself the likelihood of misidentification. This objection goes to the weight and credibility of the evidence (see *Heyward v. State,* 236 Ga. 526 (224 SE2d 383); *Talley v. State,* 137 Ga. App. 548, 551 (224 SE2d 455)), not to its admissibility.

A careful analysis of the facts of the two cases cited by appellant (*Henderson* and *Patton*) discloses that the Supreme Court rejected as inherently improbable and unbelievable the evidence which gave support to the circumstantial voice identification in those cases. Thus, the Supreme Court held as a matter of law that the evidence was not sufficient to sustain the identification of the accused as the perpetrator of the crime involved. The evidence in this case is neither inherently improbable nor unbelievable; therefore, we will not weigh the evidence but will adhere to the rule of identification stated by the Supreme Court in *Wimberly v. State,* 233 Ga. 386, 387 (3) (211 SE2d 281), to wit: " 'Identity is a question for the trior of fact, and where a witness identifies a defendant (whether the identification be based on the defendant's eyes, clothes, hairline or some intangible factor not capable of description), the credibility of the witness making such identification is not to be decided by this court.' " Under the evidence presented to the jury in this case, it certainly was warranted in concluding that the voice on the phone was identified by competent witnesses upon credible testimony as being that of the appellant Williams. See *Reese v. State,* 145 Ga. App. 453, 456 (243 SE2d 650);

*Taylor v. State,* 75 Ga. App. 205 (1) (42 SE2d 926). We find no merit in this enumeration of error.

4. In his fourth enumeration of error, Williams argues the trial court erred in charging upon the legal principle of uttering terroristic threats inasmuch as this crime was not charged nor properly included in the crimes for which he was indicted.

Appellant takes the charge out of context. The trial court carefully admonished the jury that appellant was not charged with uttering a terroristic threat. However, one of the elements of the crime of theft by extortion is that in the attempt to unlawfully obtain property of another, the accused must commit or threaten to commit another criminal offense. The trial court used the definition of terroristic threats as an example of another criminal offense. He admonished a second time that appellant was not charged with that crime but if the jury were to find upon the evidence that appellant's acts amounted to terroristic threats or any other crime, then and only then could they return a verdict of guilty as to criminal attempt to commit theft by extortion. While this portion of the charge when considered apart from the remainder of the charge and as a disjointed whole may seem objectionable, when put together and considered as a whole, the charge does not tend to confuse the jury and is perfectly sound. *Merritt v. State,* 110 Ga. App. 150, 153 (137 SE2d 917). This enumeration is without substantial merit.

5. In his last two enumerations of error, appellant complains that the trial court erred in denying a motion for a directed verdict of acquittal and the evidence is insufficient to sustain the convictions. Contrary to Williams' assertions, we find the evidence more than sufficient to withstand a motion for a directed verdict of acquittal (*Lee v. State,* 237 Ga. 626, 627 (229 SE2d 404); *Allen v. State,* 137 Ga. App. 302, 303 (223 SE2d 495)) and to satisfy any rational trier of fact of proof of guilt beyond a reasonable doubt. *Baldwin v. State,* 153 Ga. App. 35, 37 (264 SE2d 528). There is no merit in either of these enumerations.

*Judgment affirmed. McMurray, P. J., and Banke, J., concur.*

DECIDED SEPTEMBER 23, 1982 —
REHEARING DENIED OCTOBER 14, 1982 —

*Wallace C. Clayton, Melodie H. Clayton,* for appellant.
*Thomas J. Charron, District Attorney, Joseph Chambers, Assistant District Attorney,* for appellee.