A01A2055. TUCKER v. THE STATE.
(559 SE2d 171)

SMITH, Presiding Judge.

Bridgette Michelle Tucker was indicted on charges of murder, felony murder, and cruelty to children arising out of the death of her five-month-old son. Because the jury could not reach a unanimous verdict with respect to the murder charge, a mistrial was declared as to that charge. Tucker was acquitted of felony murder and convicted of cruelty to children. Her motion for new trial, as amended, was denied, and she appeals. Finding no reversible error, we affirm.

1. We first address Tucker's contention that the trial court erroneously denied her motion for directed verdict on the cruelty to children charge. She contends that the State failed to present evidence that the victim experienced excessive physical or mental pain as required by OCGA § 16-5-70 (b).

Construed to uphold the jury's verdict, evidence was presented

that on the night of June 5, 1998, according to Tucker's boyfriend, Terry White, Tucker shook the victim "a little bit" "[b]ecause he was crying." White testified that the following morning, after Tucker gave the victim a bottle, he would not stop crying, and Tucker shook him and told him to "[q]uit crying." Tucker appeared to be angry and frustrated when she did so. In his statement to the police, White stated that Tucker shook the victim "really hard," and he saw the victim's head "snap." According to White, the victim began moaning after Tucker shook him, Tucker placed him in his crib, and she and White went to sleep. Tucker told one witness that she heard the victim moaning that morning. And when White woke up later that day, he again heard the victim moaning. He attempted to change the victim's diaper and discovered that his legs were stiff. Although the victim eventually "opened his legs" and White changed his diaper, the victim "wouldn't quit moaning." He acted as if he was gasping for air. White "tried to tickle him to get him to wake up and he wouldn't." Tucker and White took the victim to the hospital, and he died on June 7.

The medical examiner testified concerning multiple brain injuries the victim suffered, which included massive hemorrhaging and detached retinas, injuries consistent "with shaking forces or violent forces applied to the head and unassociated with other major findings." Similarly, he stated that the injuries "were generalized injuries of a blunt nature that can also be described as a shaking nature of the head." This witness concluded that all of the injuries occurred 12 to 24 hours before the victim's death. Tucker admitted to the trial court, outside the presence of the jury, that she had shaken the victim, and Tucker's mother acknowledged, in the jury's presence, that she had heard Tucker make this admission. Given the evidence of the extent of the victim's injuries, along with evidence that the victim was moaning after Tucker shook him, a rational trier of fact was authorized to conclude that the victim suffered extreme physical pain as required by OCGA § 16-5-70. See generally *Sanders v. State*, 245 Ga. App. 561, 562-563 (1) (538 SE2d 470) (2000). The trial court therefore did not err in denying Tucker's motion for directed verdict.

2. Tucker contends that the trial court erroneously allowed the State to introduce evidence of similar transactions without proper notice to her. But the evidence about which Tucker complains consisted of testimony concerning prior difficulties between Tucker and the victim. Two witnesses testified that they saw Tucker "toss" the victim onto a couch from a distance of about two or three feet and call the victim a "brat." Other witnesses testified that Tucker did not keep the victim clean and appropriately dressed, and one witness saw her "pop" the victim when he took his pacifier out of his mouth. The trial court instructed the jury that evidence of prior difficulties

was admitted for the sole purpose of showing "the state of feeling between the defendant and the alleged victim and the bent of mind and course of conduct on the part of the defendant" and that the jury was not to consider the evidence for any other purpose. Evidence of prior difficulties between a defendant and a victim is admissible to "[show] motive, intent, or bent of mind toward the victim, thereby establishing a logical, probative connection between the crime charged and the prior difficulty." (Citation and punctuation omitted.) *Porter v. State*, 243 Ga. App. 498, 501 (2) (532 SE2d 407) (2000). See also *Wall v. State*, 269 Ga. 506, 509 (500 SE2d 904) (1998). The evidence of prior difficulties was relevant in this case and properly admitted.

3. Tucker argues that the trial court erroneously refused to give an instruction on accident, which she contends was her sole defense. She correctly points out that a trial court is required to charge the jury on a defendant's sole defense, even absent a written request, if some evidence supports the charge. *Tarvestad v. State*, 261 Ga. 605, 606 (409 SE2d 513) (1991). See also *Harris v. State*, 145 Ga. App. 675 (244 SE2d 620) (1978). It follows, however, that if no evidence is presented reasonably raising the defense, a charge on a defendant's sole defense is not mandatory. *Porter v. State*, 272 Ga. 533, 534 (3) (531 SE2d 97) (2000); *Fain v. State*, 165 Ga. App. 188, 189 (3) (300 SE2d 197) (1983). Here, Tucker elected not to testify, and the only eyewitness to the incident testified that Tucker appeared to be angry and frustrated and shook the victim "really hard." Furthermore, medical testimony showed that the victim's injuries were caused by a violent shaking, and the medical examiner ruled out the possibility that the injuries were caused by a fall. Unlike *Jones v. State*, 161 Ga. App. 610 (288 SE2d 788) (1982) (physical precedent only), relied on by Tucker, in which we found the defense of accident to have been raised by the evidence,[1] id. at 612 (4), this defense simply was not raised by the evidence presented here, and the trial court did not err by refusing to give the requested charge.

4. Tucker similarly argues that the trial court should have instructed the jury on involuntary misdemeanor manslaughter. Under OCGA § 16-5-3 (b), a person commits this offense when he or she causes the death of another human being without an intention to do so, "by the commission of a lawful act in an unlawful manner likely to cause death or great bodily [injury]." Tucker argued at the charge conference that the lawful act involved in the incident was an attempt to discipline the victim. But no evidence was presented

---

[1] In *Jones*, a child molestation case, the defendant gave a statement that while cleaning the victim after she had diarrhea, his finger accidentally " 'went into her vagina.' " Id. at 612 (4).

showing that Tucker was simply disciplining the victim. Without more, we cannot agree that the violent shaking of a five-month-old baby constituted a lawful act of discipline, and no *other* evidence was presented showing Tucker's action to be lawful. The evidence consequently did not warrant a charge on involuntary misdemeanor manslaughter. See *Moses v. State*, 264 Ga. 313, 315 (2) (444 SE2d 767) (1994).

5. During his videotaped statement, which was played to the jury, White used a doll to demonstrate the manner in which Tucker shook the victim. Before trial Tucker moved in limine to prevent the State from using the doll for demonstrative purposes, on the ground that use of the doll was inflammatory and prejudicial because it was not the weight of the victim and did not have "the same symmetry between the [victim's] head and the [victim's] body." Tucker enumerates the denial of this motion as error.

In general, it is within the trial court's discretion whether to allow courtroom demonstrations. The weight of this type of evidence is for the jury, and the weight to be afforded a demonstration varies according to the circumstances of similarity that the jury may find to exist between the demonstration and the occurrence under investigation. *Powell v. State*, 226 Ga. App. 861, 862 (1) (487 SE2d 424) (1997). Although the rag doll used by White to demonstrate the incident obviously was not the same size as the victim, this was a matter that affected the weight of the evidence, and use of the doll had some value in assisting the jury as it considered the severity of Tucker's actions. We cannot conclude that the trial court abused its discretion in permitting the State to use the videotaped statement.

6. Tucker enumerates as error the trial court's denial of her motion for mistrial made after two jurors disclosed, after trial began, that they knew some of the State's witnesses. On the third morning of trial, a juror informed the bailiff that although he did not recognize the names of the witnesses when they were read aloud during voir dire, he recognized some of them the day before when they entered the courtroom. When questioned outside the presence of the remaining jurors, he testified that he "knew over half" the State's witnesses, stating that he had been to one witness's house one time, where he met the victim's father, who also was a witness. He had "[n]ot really" met or spoken to the other witnesses; he just knew "them through mutual friends. . . . I've seen them around." Although this juror indicated that he would not afford the testimony of these witnesses any more or less weight than that of the other witnesses and that he had no concern as to his ability to determine the credibility of their testimony, he was excused by the trial court.

Because this juror mentioned his knowledge of the witnesses in the presence of other jurors, the trial court questioned the remaining

jurors to determine who may have heard the first juror state that he recognized some of the witnesses. Four jurors indicated that they had heard the first juror make this comment. When questioned individually, each stated that the first juror had simply stated that he knew the witnesses, that he had not expressed any opinion concerning the witnesses' testimony, and that each could remain fair after hearing the first juror make this statement. One of these four jurors also stated that he recognized one of the State's witnesses. He had talked with White "a couple of times" when they were in high school together. Although this juror stated that he "didn't really know him too well," and stated that his acquaintance with White would have no effect on his decision concerning White's credibility, he also indicated that White was "a pretty good fellow." This juror was also excused.

After these jurors were questioned individually, Tucker moved for a mistrial on the ground that the entire jury was tainted. The trial court denied the motion, concluding that after removal of the two jurors who recognized the State's witnesses, "the jury remains fair and impartial and can deliberate fairly as to both parties." After the jury returned to the courtroom, the trial judge asked for a show of hands of those jurors who felt they could not remain and be fair and impartial; no juror responded.

The decision whether to grant or deny a motion for mistrial rests within the trial court's discretion and will not be disturbed absent

> a manifest abuse of that discretion which threatens the defendant's right to a fair trial. This is especially true when the grounds for the mistrial relate to jury prejudice, for the trial judge is in a peculiarly good position to observe the jurors, the witnesses and the attorneys in order to evaluate the extent of the prejudice.

(Citations and punctuation omitted.) *Moss v. State*, 200 Ga. App. 253, 254 (407 SE2d 477) (1991). Given the prompt action of the trial court upon learning that the first juror recognized the State's witnesses, the testimony of the jurors who were individually questioned, as well as the response by the remainder of the jurors that they could remain fair and impartial, we find no abuse of the trial court's discretion in denying Tucker's motion for mistrial. See *Speed v. State*, 270 Ga. 688, 694 (26) (512 SE2d 896) (1999).

7. Relying on *Harris v. State*, 273 Ga. 608 (543 SE2d 716) (2001), Tucker argues that the trial court gave an erroneous instruction on intent. The court instructed the jury that it could infer, if it wished, "that the acts of a person of sound mind and discretion are the product of that person's will and that a person of sound mind and discretion intends the natural and probable consequences of those acts."

The trial court further charged the jury that whether to make such inferences was solely within its discretion.

*Harris* is distinguished from this case. In *Harris*, the trial court gave substantially the same charge as given here, *coupled* with the charge that "if a person of sound mind and discretion intentionally and without justification uses a deadly weapon in the manner in which the weapon is ordinarily used and thereby causes the death of a human being, you may infer the intent to kill." Id. at 609 (2). The trial court did not, however, instruct the jury that it could use its discretion to determine whether to make this inference. Id. at 610 (2). The Supreme Court held "that the giving of a 'use of a deadly weapon' charge" was error, whether or not the charge was accompanied by an instruction that the jury had discretion to make the inference. Id. But here, the trial court did instruct the jury that the determination of whether to make the authorized inference was within its discretion. And more importantly, this case did not involve use of a deadly weapon. Consequently, a "deadly weapon" charge was neither authorized nor given in this case, and we find no error with the trial court's general instruction on intent.

8. Tucker argues that the trial court erred in refusing to grant a mistrial after White gave a nonresponsive answer on direct examination, testifying that he wanted to "get the truth out that [the victim] was shaken, that [the victim] was murdered." The trial court sustained Tucker's objection to the testimony and instructed the jury that White's opinion concerning the death of the alleged victim was stricken and that the jury must disregard the testimony. The court received no response from the jury when it asked for a show of hands of jurors who did not understand or could not follow this instruction. Tucker then moved for a mistrial and argued that the curative instruction was not sufficient to remove the taint of White's testimony.

This testimony was harmless. As for White's statement that the victim "was murdered," Tucker was not convicted of any homicide. And with regard to his testimony that the victim "was shaken," this was cumulative of other evidence properly admitted without objection at trial and cannot be considered harmful. See, e.g., *Whatley v. State*, 270 Ga. 296, 299 (7) (509 SE2d 45) (1998); *Choat v. State*, 246 Ga. App. 475, 478-479 (3) (540 SE2d 289) (2000). The trial court therefore did not abuse its discretion in denying Tucker's motion for new trial on this ground.

*Judgment affirmed. Barnes and Phipps, JJ., concur.*

DECIDED JANUARY 24, 2002 — ▮▮▮▮▮▮▮▮

*Sexton & Morris, Lee Sexton,* for appellant.
*Robert E. Keller, District Attorney, Bonnie K. Smith, Assistant District Attorney,* for appellee.