## A02A1818. HUBBARD v. THE STATE.
(576 SE2d 663)

BARNES, Judge.

Enoch Hubbard, acting pro se, appeals his conviction for burglary. He enumerates several errors made by the trial court, contending that (1) the evidence was insufficient; (2) the court erred in denying his motion in limine regarding identification; (3) the State improperly vouched for its witness; (4) the court erred in denying his motion for mistrial after the State's witness improperly placed his character into evidence; and (5) his trial counsel was ineffective. For the reasons that follow, we affirm.

1. We view the evidence on appeal in the light most favorable to the verdict and no longer presume the defendant is innocent. We do not weigh the evidence or decide the witnesses' credibility, but only determine if the evidence is sufficient to sustain the convictions. *Taylor v. State*, 226 Ga. App. 254, 255 (485 SE2d 830) (1997). Hubbard first challenges the sufficiency of the evidence against him.

Viewed in the light most favorable to the verdict, the evidence at trial established that on Sunday afternoon, November 1, 1998, the victim, who owned a salvage yard, responded to an alarm at the busi-

ness. He drove to the shop, heard a noise coming from the warehouse, and entered to find a man with an exhaust manifold in one hand and salvaged copper in the other hand. The man was standing by a door that was cracked open, and the victim shone his light in the man's face. The victim recognized the man, who then squeezed out through the door and began to run away. The victim chased the man outside, where the two stopped for a short time a little more than an arm's distance apart; then the man ran off into a chest-deep swampy area, and the victim lost him.

A sheriff's deputy on patrol responded to the attempted burglary call and spoke with the victim. A detective joined them, and the victim described the burglar as a black male, 30 to 35 years old, larger than the victim, wearing jeans, slip-on boots, and a white t-shirt, who would be wet up to his armpits. The victim also said he had seen the man before but could not remember his name. After reviewing some business paperwork, the victim said he thought the burglar's name was Earl Robinson but he was not sure. The detective testified that he knew Earl Robinson, and that Robinson was a lot smaller than the burglar described by the victim. The deputy and detective left the scene, and the detective drove around to the other side of the swamp to try to spot the burglar. After driving around for 20 to 30 minutes, the detective spotted a man who fit the description given by the victim, wet from the chest down and wearing jeans and a white shirt. The detective recognized the man as Enoch Hubbard, the defendant, whom he had known for ten to fifteen years.

By the time the detective turned his car around and returned to the spot, Hubbard had disappeared. After calling for other deputies to patrol the area, the detective retrieved a picture of Hubbard from the sheriff's office and met the victim at a local store. The victim quickly identified Hubbard as the man he had seen in his warehouse, and Hubbard was subsequently arrested and charged with burglary.

We conclude that the evidence as outlined above was sufficient for a rational trier of fact to find Hubbard guilty beyond a reasonable doubt of burglary. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Hubbard asserts that the State improperly "vouched" for its witness, the victim, in its closing argument. The State argued that, while the victim knew the burglar, he could not remember his name after what must have been a frightening experience. He was "a little muddy on some things. . . . If you wasn't [sic] then that would possibly be suspect, but he was honest with you" and gave an accurate description of the man despite having the wrong name. The State responds that Hubbard failed to object to the argument when it was made and has therefore waived his right to raise it on appeal.

"The longstanding rule is that counsel may not state to the jury his or her personal belief about the veracity of a witness." (Footnote omitted.) *Bolden v. State*, 272 Ga. 1, 2 (525 SE2d 690) (2000). Because no timely objection was made, "the test for reversible error is not simply whether or not the argument is objectionable, or even if it might have contributed to the verdict; the test is whether the improper argument in reasonable probability changed the result of the trial." (Citation omitted.) *Todd v. State*, 261 Ga. 766, 767 (2) (a) (410 SE2d 725) (1991). Pretermitting whether characterizing a witness as "honest" is equivalent to stating a personal belief about the witness's veracity, we cannot say that a reasonable probability exists that this argument changed the result in this case and therefore find no reversible error.

3. Hubbard contends that the trial court erred in denying his motion in limine and admitting evidence of his photo identification as well as his in-court identification. Hubbard argues that the identification was impermissibly suggestive because the detective showed the victim only one picture.

A pretrial identification procedure may be so tainted that an in-court identification should be excluded, if the procedure was both impermissibly suggestive and resulted in a substantial likelihood of irreparable misidentification. *Bradley v. State*, 152 Ga. App. 902 (264 SE2d 332) (1980). The question is whether the identification was reliable despite the suggestive confrontation, considering all the circumstances. Id. Those circumstances include the witness's opportunity to see the criminal at the time of the crime; his degree of attention; the accuracy of his prior description of the criminal; the level of certainty he demonstrated at the confrontation; and the length of time between the crime and the confrontation. Id. at 902-903, citing *Neil v. Biggers*, 409 U. S. 188, 199 (93 SC 375, 34 LE2d 401) (1972).

The display of a single photograph to a victim for identification purposes is inherently suggestive, *Perkins v. State*, 216 Ga. App. 118, 119 (1) (453 SE2d 135) (1995), a proposition we have espoused for at least 25 years. *Talley v. State*, 137 Ga. App. 548, 551 (2) (224 SE2d 455) (1976). We must thus determine whether, under the "totality of the circumstances," this single photographic display was conducive to irreparable mistaken identification.

Although the display was impermissibly suggestive, misidentification was not likely because the victim had ample opportunity to view the criminal at the time of the crime; all of his attention was focused upon the criminal who had been caught in the act; the victim gave a detailed description of the criminal's size, clothing, and wetness; he immediately identified the defendant from the picture shown to him within two hours of the incident; and he positively identified the defendant at trial. *Hixson v. State*, 217 Ga. App. 606,

608 (3) (458 SE2d 402) (1995). The victim told the deputy sheriffs at the scene that he recognized the defendant, although he could not remember his name. We therefore find no substantial likelihood of irreparable misidentification in this case, and thus the trial court did not commit reversible error in denying Hubbard's motion in limine.

4. Hubbard asserts that the trial court erred in denying his motion for mistrial after the State's witness improperly placed his character into evidence. The investigating detective testified that, after he saw the defendant by the side of the road, wet from the chest down, he went to the sheriff's office and retrieved a picture of Hubbard. Hubbard objected and moved for a mistrial because the detective had introduced impermissible character evidence by implying that Hubbard had a criminal record. The trial court sent the jury out and held an evidentiary hearing during which a sheriff's office employee testified that she maintains a photo database, about half of which comprises photographs taken for reasons other than mug shots, such as for permits, identification cards, and employees. The trial court denied the motion for mistrial, and the detective testified to the jury that, after retrieving Hubbard's photograph, he took it to the victim for identification.

Regardless of the kind of photograph retrieved from the sheriff's office, we find no error. The Supreme Court of Georgia has held that a detective's statement that he " 'decided to pull some pictures of [the defendant] from our file[s]' " does not place the defendant's character into evidence. *Woodard v. State*, 234 Ga. 901, 902 (2) (218 SE2d 629) (1975). The testimony of a witness that the victim picked the defendant's picture out of "an album" also does not place the defendant's character in issue. *Martin v. State*, 225 Ga. 234, 236 (2) (167 SE2d 638) (1969). Testimony that a witness identified a picture of the defendant taken three years earlier, which may have intimated that the picture was included in a "rogue's gallery," also did not put the defendant's character in issue. *Tanner v. State*, 228 Ga. 829, 832 (6) (188 SE2d 512) (1972). Even the admission into evidence of a "mug shot" of the defendant does not inject his character into evidence. *Creamer v. State*, 229 Ga. 704, 708 (2) (194 SE2d 73) (1972). Accordingly, the trial court did not err in denying Hubbard's motion for mistrial.

5. Finally, Hubbard argues that his trial counsel's assistance was ineffective because the lawyer conducted no pretrial discovery, did no pretrial preparation, and filed no pretrial motions.

> In order to establish a claim of ineffective assistance of counsel, the appellant must show both that counsel's performance was deficient and that a reasonable probability exists that but for counsel's deficient performance, the result of the

proceeding would have been different. *Strickland v. Washington*, 466 U. S. 668, 695-696 (104 SC 2052, 80 LE2d 674) (1984).

*Davis v. State*, 221 Ga. App. 131, 133 (3) (470 SE2d 520) (1996).

In his recitation of the facts, Hubbard quotes his trial counsel as follows, in response to the trial court asking why it was hearing a motion in limine while a jury was waiting:

> A large part of the problem in this case is [the] way that it went from Mr. Urquhart to Mr. Scarlet to me. Until last Wednesday, I didn't even know we were going to trial on the burglary case. I thought we were going to be trying the theft by taking case. There were no motions filed; I received no discovery. . . . The point I'm trying to get at is there have been no discovery motions filed. I wasn't involved in the case at that point. I didn't get the police report until sometime on Monday, and it was then, in the police report that I saw the whole problem with misidentification.

Hubbard's trial counsel testified at the motion for new trial hearing that he was not telling the trial court that he was unprepared to try the case, but was explaining why he had not earlier filed a written motion in limine regarding the identification evidence. The judge proceeded to hold an evidentiary hearing on the motion, which was critical, and the lawyer further testified as follows:

> I was prepared for that hearing. I had done an extensive amount of research, consulted with several other attorneys who, frankly, had more experience than myself, and I felt I had my ducks in a row for that motion. . . . It was not my intent to in any way convey to the Court that I was not prepared for the trial or for the motion.

Hubbard's trial lawyer noted that he had focused on the issue of identification, which was the only evidence connecting Hubbard to the crime, and "hammered that throughout the trial." Later in the hearing, when the State asked Hubbard's trial lawyer if he had done the best he could to represent Hubbard, the lawyer replied:

> You know, I think I did. The night before, I think it's important to note that I did — I had prepared everything. I had prepared a trial notebook, and I went to the jail to see Mr. Hubbard, to run over everything the night before. I had butterflies, and that's just something that I do. And Mr. Hubbard had bonded out that night, strangely enough. At about

six o'clock they had given him a bond. And then I came up here early that morning, and Mr. Hubbard came in right after — right before the jury was brought in. . . . And frankly, I don't think I had a way of getting in contact with him.

Finally, Hubbard's trial counsel testified that, to prepare for the trial, he had talked to Hubbard, read the reports, talked to the investigating detective, tried to contact the victim, and filed a consolidated motions packet. He had looked through the State's file and determined that there was no discovery material he did not have.

"The burden is on the defendant to establish his claim of ineffective assistance of counsel." (Citations omitted.) *Garrett v. State*, 196 Ga. App. 872, 874 (1) (397 SE2d 205) (1990). Hubbard has not shown that his counsel's performance was deficient, nor has he even alleged how the results would have been different but for a deficiency. Therefore, the trial court did not err in denying his motion for new trial due to ineffective assistance of counsel.

*Judgment affirmed. Adams, J., concurs. Ruffin, P. J., concurs in the judgment only.*

DECIDED JANUARY 23, 2003.

Enoch Hubbard, *pro se.*

*Stephen D. Kelley, District Attorney, W. Franklin Aspinwall, Jr., George C. Turner, Jr., Assistant District Attorneys*, for appellee.