## A03A1061. WESTBROOKS v. THE STATE.

(588 SE2d 335)

RUFFIN, Presiding Judge.

A jury found Karen Westbrooks guilty of two counts of forgery, one count of theft by deception, and two counts of theft by taking.[1] On appeal, Westbrooks argues that the evidence was insufficient to support her conviction for theft by deception and theft by taking. She also alleges that the court erred by admitting evidence of her prior difficulties with one of the victims. For the reasons that follow, we affirm.

1. In reviewing Westbrooks' challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict.[2] We neither weigh the evidence nor determine witness credibility, but simply ensure that the evidence was sufficient to find Westbrooks guilty beyond a reasonable doubt.[3] "Conflicts in the testimony of the witnesses are a matter of credibility for the jury to resolve."[4] As long as there is some competent evidence, even though contradicted, to support each element of the State's case, we will uphold the jury's verdict.[5]

(a) *Theft by Deception.* The record reveals that on October 19, 1998, Lottie Lyles opened an account at First Commerce Bank by depositing a $1,000 check drawn on a closed account that belonged to Karen L. Westbrooks. At that time, Lyles took out $500 in cash from the account. On October 21, Lyles deposited $750 into the account, and then on October 23, she put another $450 into her account and withdrew $100 in cash. After the bank discovered that the checks Lyles deposited were worthless and Lyles made additional withdrawals, Lyles' account balance became negative. According to a bank representative, the bank lost $1,836 as a result of Lyles' scheme.

Janis Magnum, a police investigator, questioned Westbrooks about her involvement in the scheme. According to Magnum, Westbrooks said that she knew that there was no money in her Bank of Danielsville account, that she gave the checks on that account to Lyles, and that she knew that Lyles was depositing them. The two women planned to split the cash that Lyles received from the bank. Westbrooks also told Magnum that she drove Lyles to the bank when she made some of the deposits.

---

[1] Westbrooks was also charged with two counts of financial transaction card fraud, but the court dismissed those charges before the trial began.

[2] See *Hubbard v. State*, 259 Ga. App. 275 (1) (576 SE2d 663) (2003).

[3] See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Dunn v. State*, 248 Ga. App. 223, 224 (546 SE2d 27) (2001).

[4] *Roberts v. State*, 258 Ga. App. 107 (1) (572 SE2d 744) (2002).

[5] See id.

At trial, however, Westbrooks' testimony varied from the statement given to Magnum. According to Westbrooks' trial testimony, Lyles stole her checks. Westbrooks also claimed that she learned about Lyles' scheme after the fact. Westbrooks testified that the cash that the women were supposed to split came from checks that Lyles had taken from Westbrooks' sister, not from Westbrooks' Bank of Danielsville account. Finally, Westbrooks acknowledged driving Lyles to the bank and admitted that she knew that Lyles was depositing checks that "weren't any good."

On appeal, Westbrooks argues that the only evidence linking her to the theft by deception charge was Magnum's testimony regarding her pretrial statement. Westbrooks suggests that Magnum misinterpreted that statement. Although Westbrooks concedes that her statement is "arguably inculpatory," she argues that "there is another equally plausible interpretation — the interpretation [she] tendered . . . at trial." Westbrooks implies that because her statement to Magnum can be interpreted to prove her innocence, the jury was required to do so. We disagree.

Interpreting the evidence and assessing witness credibility are particularly within the province of the jury.[6] Here, the jury exercised its prerogative and rejected Westbrooks' self-serving testimony.[7] As the evidence was sufficient to sustain Westbrooks' conviction for theft by deception, this claim of error provides no basis for reversal.[8]

(b) *Theft by Taking.* The evidence shows that, in October 1998, a person calling Community Bank & Trust made four unauthorized withdrawals from Gerald Emans' account, totaling $1,350. Because Emans did not have a PIN, all that was needed to access his account was his account number and his Social Security number, both of which could be found on his bank statement.

Magnum interviewed Emans about this incident, and he told her that he believed that whoever withdrew the money from his account had obtained his information by tampering with his mail and reading his bank statement. Magnum knew that Westbrooks lived near Emans and had a mailbox near his. And, for each withdrawal from Emans' account, there was a corresponding credit on the same day to Westbrooks' Community Bank & Trust account. Magnum questioned Westbrooks about these deposits, and Westbrooks said she did not know how the money got into her account. According to Westbrooks, she learned about the money when she inquired about her balance while cashing a check at the bank. Westbrooks said that she thought

---

[6] See *Smith v. State*, 250 Ga. App. 532, 535 (1) (552 SE2d 499) (2001).
[7] See id.
[8] See *Gaston v. State*, 257 Ga. App. 480, 482 (1) (571 SE2d 477) (2002).

the bank had made an error. Upon discovering the additional money in her account, Westbrooks withdrew the funds.

On appeal, Westbrooks contends that the State failed to prove that she unlawfully appropriated "U. S. currency" as alleged in her indictment for theft by taking. According to Westbrooks, there was no evidence that she received *currency* from Emans' account, which was electronically debited. Assuming, for the sake of argument, that the use of the word "currency" created a variance in the allegation in the indictment and the evidence at trial, such variance is not fatal.

We addressed a similar issue in *Merritt v. State*,[9] where the indictment alleged that the defendant stole "U. S. currency," but the evidence showed that he had stolen checks. As we found that the variance was not fatal, this allegation of error lacks merit.[10]

2. Finally, Westbrooks contends that the trial court erred in admitting evidence of prior difficulties that she had with Emans. Over Westbrooks' objection, the State tendered evidence that, in 1996, Westbrooks pled guilty to forging checks drawn on Emans' account. Westbrooks argues that the trial court erred in admitting this incident as a prior difficulty, asserting that it was "an unserved, non-similar transaction involving the same parties," rather than the kind of prior difficulty evidence "contemplated by [case law]." We disagree.

While Westbrooks is correct that evidence of forgery is not typically used as prior difficulty evidence,[11] she presents no reason why this renders evidence of her forgery inadmissible. It is true that the Supreme Court of Georgia has described prior difficulties as evidence of the "defendant's prior acts toward the victim, be it a prior assault, a quarrel, or a threat."[12] But we know of no case law limiting prior difficulty evidence to those specific circumstances, and when we examine the rationale behind the rule, it is clear that this type of evidence falls within that reasoning.

Prior difficulty evidence is admissible to demonstrate "the relationship between the victim and the defendant and [such evidence] may show the defendant's motive, intent, and bent of mind in committing the act against the victim which results in the [current]

---

[9] 254 Ga. App. 788 (564 SE2d 3) (2002).

[10] See id. at 790-791 (1) (b).

[11] Prior difficulty evidence is often admitted in cases where there is a history of violence or threats between the defendant and the victim. See *McMichen v. State*, 265 Ga. 598, 604 (4) (a) (458 SE2d 833) (1995) (evidence of defendant's previous harassment and rape of ex-wife admissible as prior difficulty in murder case); *Ware v. State*, 259 Ga. App. 267, 268 (2) (576 SE2d 649) (2003) (evidence of defendant's prior assaults on victim admissible as prior difficulty in aggravated battery case); *Tucker v. State*, 253 Ga. App. 433, 434-435 (2) (559 SE2d 171) (2002) (evidence that defendant hit child, called child names, and threw child on couch admissible as prior difficulty in child cruelty case).

[12] *Wall v. State*, 269 Ga. 506, 509 (2) (500 SE2d 904) (1998).

charges."[13] In this case, Westbrooks' prior forgeries on Emans' account show that their relationship was characterized by Westbrooks' financial victimization of Emans. Evidence of such a relationship is relevant to proving Westbrooks' intent and bent of mind to steal from Emans, especially here, as Westbrooks denies transferring funds from Emans' account into her own account.[14]

Furthermore, the State made the necessary showings before admitting the evidence, including that (1) the evidence is introduced to prove the defendant's motive or intent, (2) there is sufficient evidence that the defendant and the victim were the parties involved in the prior difficulty, and (3) there is a sufficient connection between the prior difficulty and the current charges.[15] Under these circumstances, the trial court did not err in admitting evidence of Westbrooks' prior crime against Emans as a prior difficulty.[16]

*Judgment affirmed. Smith, C. J., and Miller, J., concur.*

DECIDED OCTOBER 7, 2003.

*Donna A. Seagraves*, for appellant.
*Timothy G. Madison, District Attorney*, for appellee.

---

[13] Id.

[14] See *Suggs v. State*, 272 Ga. 85, 86 (2) (b) (526 SE2d 347) (2000) ("To be admissible, the evidence of prior difficulties must be relevant to prove a material issue in dispute.").

[15] See *Wall*, supra at 507-509 (2).

[16] Westbrooks also claimed that the admission of the prior difficulty evidence was error because it involved hearsay. But Westbrooks presents no argument or citation for this claim, and thus it is deemed abandoned according to Court of Appeals Rule 27 (c) (2).