## A04A2387. STEPHENS et al. v. HYPES.
(610 SE2d 631)

MIKELL, Judge.

Mark and Charlotte Stephens filed the underlying personal injury and loss of consortium action against Lonnie Hypes, as the administrator of the estate of Jammie Marie Hypes Stephenson, following a traffic accident in which Mark Stephens was injured and Jammie Stephenson was killed. The jury returned a defense verdict. The Stephenses appeal, arguing that the trial court erred in charging the jury on the doctrine of sudden emergency. Finding no error, we affirm.

The record shows that on the morning of August 11, 2000, Mark Stephens was riding in the front passenger seat of a Ford F-150 king cab truck driven by his cousin, Raymon Bullock, when the truck collided with Stephenson's car, which had spun out of her lane and slid approximately 650 feet after Stephenson swerved to avoid a deer in the roadway. The two vehicles were traveling in opposite directions on Thompson Mill Road, a two-lane roadway running along the county line between Hall and Gwinnett counties. Stephenson was killed in the accident. Stephens's right femur was driven through his hip socket, causing a dislocation and fracture of his hip, which required surgery, hospitalization, and rehabilitation.

Two eyewitnesses testified at trial. William S. Maddox was driving the vehicle that was directly in front of Bullock's truck on the two-lane road. Maddox testified that a deer stepped into the road and that Stephenson's car veered left, pulled right, and then started "fish-tailing" and skidding sideways across the road. According to Maddox, Stephenson passed his vehicle and then collided with Bullock's truck. Maddox testified that Stephenson was traveling "about the regular speed limit, about 50, 55," when she encountered the deer and that he believed the speed limit was "about 55 miles an hour." Maddox explained: "She wasn't flying or nothing like that. When she come over the hill, she was — just a normal speed." On cross-examination, Maddox was shown a statement that he had filled out for an attorney shortly after the accident. In that statement, when asked about Stephenson's speed, Maddox wrote: "I have no idea (around normal speed, around 50 or 55 miles per hour)." In a recorded statement taken by the same attorney on March 15, 2002, Maddox

estimated Stephenson's speed as "between 50 and 55," and explained "[t]hat was the top speed she was going. She wasn't going very fast."

The second eyewitness, Jenning Sonnon, was driving the vehicle immediately behind Bullock's truck. Sonnon testified by deposition that he "guessed" that Stephenson was traveling over 65 mph when she encountered the deer in the road. He also testified repeatedly in his deposition, which was taken in August 2003, that he saw the deer that Stephenson swerved to avoid; however, in a recorded statement on August 22, 2000, eleven days after the accident, he denied having seen the deer at all and said that another driver had told him about the deer. When confronted with the contradiction, Sonnon stated: "As far as I can remember from my knowledge, when I look back and think about the accident, I can remember seeing a deer I thought. That's what I can remember."

Georgia State Trooper Samuel Taylor investigated the accident. He concluded that Stephenson swerved to avoid hitting a deer, skidded into the oncoming lane of traffic, and was struck by Bullock's truck in a "t-bone-type collision." He further testified that, based on his experience, the most common reaction drivers have to a deer in the road is to swerve to avoid striking the animal. According to Trooper Taylor, the speed limit on that stretch of road was 50 mph, and he saw no evidence that Stephenson had been speeding. He recalled that the pavement was wet and explained that it was easier to lose control on a wet surface.

The trial court gave the following jury charge on the doctrine of sudden emergency:

> I charge you that the doctrine of sudden emergency refers only to those acts which occur immediately following the apprehension of the danger or crisis and before there is time for careful reflection. The rule of sudden emergency is that one who is in a sudden emergency acts according to his or her best judgment or, because of the lack of time in which to form a judgment, acts in the most judicious manner and is not chargeable with negligence.

> However, I charge you that an emergency or sudden emergency is a sudden peril caused by circumstances in which the Defendant, Jammie Stephenson, did not participate and which offered her a choice of conduct without time for thought so that error in her choice might be attributable not to lack of care but to lack of time to assess the situation.

> If you should believe from the evidence that the Defendant, Jammie Stephenson, was suddenly put in a place of peril

caused by circumstances in which she did not participate without sufficient time to consider all the facts and circumstances which surrounded her, the law would not require of her the same degree of care and caution that it would a person who had ample time for the exercise of his judgment. In other words, when a person is suddenly put in the position of peril without negligence on that person's part and where, under the circumstances the emergency is so great that they have to act without having time to think, then a person confronted with such sudden emergency is not held to as strict accountability as a person who had ample time to consider the circumstances of the situation.

At the jury's request, the court gave the above charge a second time during its deliberation.

Mr. and Mrs. Stephens argue that the trial court erred in charging the jury on the doctrine of sudden emergency because the evidence demonstrated that Stephenson helped create any emergency she faced by exceeding the legal speed limit. "When a question of law is at issue, as here, we owe no deference to the trial court's ruling and apply the 'plain legal error' standard of review." (Citation, punctuation and footnote omitted.) *Butgereit v. Enviro-Tech Environmental Svcs.*, 262 Ga. App. 754, 756 (2) (586 SE2d 430) (2003). Bearing this standard in mind, we find no legal error in the giving of the jury instruction at issue.

There is no question that the given charge was an accurate statement of the law concerning the doctrine of sudden emergency. See *Willis v. Love*, 232 Ga. App. 543, 545 (2) (b) (502 SE2d 487) (1998); *Holt v. Scott*, 226 Ga. App. 812, 815 (2) (487 SE2d 657) (1997). Further, common sense dictates that a deer in the road could give rise to a sudden emergency. "Whether an emergency existed or not, that issue, like all questions of diligence, negligence, contributory negligence and proximate cause except in plain and indisputable cases, was a question for determination by the jury." (Punctuation omitted.) Id.

The Stephenses are correct that the sudden emergency charge would not be authorized if the evidence established as a matter of law that Stephenson participated in causing the emergency situation. *Butgereit,* supra at 757 (2). However, we agree with the trial court that a jury issue existed as to whether Stephenson exceeded the legal speed limit and, therefore, was negligent. Two witnesses gave lay testimony concerning Stephenson's speed: Maddox testified that her speed was 50 or 55 mph, and Sonnon estimated that Stephenson was traveling at least 65 mph. The state trooper who investigated the accident testified that he saw no evidence that the decedent had been speeding. It is well settled that conflicts in the testimony of witnesses

are a matter of credibility for jury determination. *Westbrooks v. State*, 263 Ga. App. 566 (1) (588 SE2d 335) (2003). Further, "the determination of a witness's credibility . . . is within the exclusive province of the jury." (Citation and punctuation omitted.) *Bartley v. State*, 267 Ga. App. 367-368 (599 SE2d 318) (2004). We have repeatedly held that "[w]hen a party presents any evidence — even slight evidence — on a particular issue, a trial court does not err in charging the law on that issue." (Footnote omitted.) *Matheson v. Stilkenboom*, 251 Ga. App. 693, 697 (2) (b) (555 SE2d 73) (2001). See also *Jones v. Sperau*, 275 Ga. 213, 214 (2) (563 SE2d 863) (2002); *Mercker v. Abend*, 260 Ga. App. 836, 839 (1) (581 SE2d 351) (2003). Here, there was some evidence that Stephenson was confronted by a sudden emergency that she did not participate in creating, and the trial court was correct in charging the jury on that issue.

The two cases cited by the Stephenses do not support their argument that the trial court erred in charging the jury on sudden emergency. *Gray v. Alterman Real Estate Corp.*, 196 Ga. App. 239 (396 SE2d 42) (1990), is inapposite because it dealt with the application of the "distraction theory" to a pedestrian who stepped in a pothole and not with the sudden emergency doctrine. Id. at 239-240. In *Butgereit*, supra, we held that the trial court erred in giving the sudden emergency charge because negligence per se had been proven by the fact that the defendant had not contested the traffic citation he received in connection with the accident at issue. Id. at 755-757 (1), (2). In the case sub judice, there was no such proof of Stephenson's negligence. Accordingly, the jury charge on the sudden emergency doctrine was authorized, and the trial court did not err.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED FEBRUARY 16, 2005 —
RECONSIDERATION DENIED MARCH 3, 2005.

*James M. Poe*, for appellants.

*Temple, Strickland, Counts & Dinges, William D. Temple, William D. Strickland*, for appellee.