A93A1481. ARNOLD v. THE STATE.
(437 SE2d 844)

BEASLEY, Presiding Judge.

A jury convicted Arnold of theft by deception, OCGA § 16-8-3, in obtaining a $250,000 loan by intentionally and falsely representing to

the lenders that he owned certain real property to secure the loan and that he had conveyed the property to the lenders, when in fact he never owned the property and thus could not convey it. A new trial was denied. Arnold challenges the sufficiency of the evidence with respect to the charge as specified and the trial court's failure or refusal to give three jury instructions.

There are five separate enumerations of error, but Arnold makes one collective argument with no effort to follow or differentiate among his enumerated errors. Consideration is unnecessarily difficult. Court of Appeals Rule 15 (c) (1) provides that "[t]he sequence of argument or arguments in the briefs shall follow generally the order of the enumeration of errors, and shall be numbered correspondingly." Appellant's pointing out in a motion for reconsideration later that we deciphered his brief incorrectly will prompt no relief. Rule 48 (f).

1. In his second enumeration of error, Arnold contends that the trial court erred in failing to grant his motion for a directed verdict of acquittal at the close of the State's evidence.

The arguments that appear to pertain to this enumeration are: (a) There was a fatal variance between the proof at trial and the allegations of the indictment, in that any evidence of a criminal act was by a corporation rather than by Arnold individually, and further, that the indictment alleged that Arnold was given cash when in fact a check was given. (b) The State failed to prove venue as required under OCGA § 16-8-11. (c) The State failed to prove the elements of theft by deception, namely, that there was no evidence of "benefit" to Arnold and the evidence was that the lenders relied on a promise to do something in the future rather than on a promise as to a past or present fact. Additionally, Arnold asserts that the lenders' lack of diligence in failing to conduct a title examination was a complete defense to his prosecution.[1]

The evidence construed in favor of the verdict showed the following. Arnold purported to attempt to develop, manufacture, and market his invention of a safety light device to be mounted on a motorcycle or bicycle helmet or to be worn by a pedestrian. He called his venture Todd Industries, Inc. Arnold had no success in finding investors until late 1988 when he met investment consultant Fay. Arnold told Fay he was interested in borrowing $500,000. Fay had numerous exchanges with Arnold and Arnold's national sales manager and representative, Ledford.

Fay spoke about the possibility of investment in the project with two of his clients, dentists Allison and Paris, both from Columbus.

---

[1] Arnold's arguments in support of a directed verdict differed at trial. He urged that there had not been "reasonable reliance" by the lenders on any misrepresentation and that the State had failed to show that there were any damages.

Arnold and/or a representative provided Fay, Allison, and Paris with information about Arnold and the venture, including personal financial and income statements and projected profits. Such documents showed Arnold's forecast of business profits for a period slightly in excess of a year to be around $9,000,000 with his yearly income in the hundreds of thousands of dollars. He claimed a net worth of approximately $9,000,000 and ownership of Creekview Townhomes in DeKalb County worth $2,995,000 with an equity of $588,500.

Fay, Allison, and Paris agreed to invest $250,000 which was to be loaned from a bank. Fay was to borrow $125,000 and Allison and Paris collectively were to borrow the remaining $125,000. The three were to get ten percent of the company stock and the loan was to be repaid in six months from the date of its making. Arnold agreed to secure the loan with collateral of a subordinated mortgage on the Creekview Townhomes. Without such collateral, Fay would not have loaned the money or permitted his clients to do so. Without the land as security, banks would not fund the loan in the first place.

Fay retained Columbus attorney Sprouse to prepare the required documents. No title examination was conducted. On February 25, 1989, Arnold and Ledford came to Sprouse's office in Columbus and met with the parties to close the deal. Arnold assured the investors that they "ought to feel real safe" about the deal because they "got collateral worth ten times more than [their] investment."

Sprouse had prepared a security deed on the Creekview Townhomes in favor of the three investors for Arnold to sign. Arnold did not sign then, indicating that he did not know whether he or his corporation owned the property; he took the original security deed with him "to have executed by the appropriate owner." The investors did not give Arnold the money at that time. Arnold later returned the deed, signed by him individually and on behalf of Todd Industries, Inc. At the time Arnold executed the security deed on the Creekview Townhomes in favor of the investors, he did not own the property.

Earlier in 1988, Arnold had become aware that the property was for sale and contacted the owner. Approximately three months prior to the closing with Fay, Allison, and Paris, in December 1988, Arnold executed an option contract on behalf of Todd Industries to purchase the townhomes. The option was to be exercised within 20 days for a purchase price of $175,000 above the outstanding loan balance with an assumption of the loan balance, and the sale was to be closed by January 31, 1989. Neither Arnold nor his company ever exercised the purchase option.

After the signed security deed was returned to the investors, arrangements were made to give Arnold the check for $250,000. Arnold instructed his employee Ledford to go to Columbus on March 2, 1989 to receive the check, which Ledford did. Arnold also instructed Led-

ford to stop at the first telephone he came to as soon as he got the check and to call Arnold to say he had the check in hand, which Ledford also did. Ledford drove straight back to Atlanta to Arnold's house and delivered the check to Arnold as directed. The next morning, Ledford accompanied Arnold to a bank to deposit the check; Arnold wanted to "make a little noise" about depositing a check for $250,000 because the bank was one of the institutions which had refused to loan him money.

With the $250,000 in hand, Arnold leased an office, warehouse, and furnishings and began to pay himself a salary of $10,000 a month; he also purchased two new luxury automobiles for himself and his wife. Arnold's operation had the appearance of having a product to sell but no product was ever manufactured. By July or August 1989, none of the $250,000 remained.

At trial, Arnold admitted that he did not own the townhomes at the time he executed the security deed in favor of Fay, Allison, and Paris. His defense was that he signed the document not knowing what it was. When asked why he had not informed the three investors that he did not own the townhomes, Arnold responded that he would have told them if they had asked but that they did not. Arnold further testified that he had no present income other than $680 monthly from social security.

The State's theory was that Arnold told the owner of the townhomes that he intended to purchase the property in order to get a legal description so that he could give the bogus security deed to the investors and obtain their money, and that Arnold figured on the investors not doing anything about it. The jury found defendant guilty as charged.

(a) There was no fatal variance between the allegata and the probata as Arnold urges.

First, Arnold has provided no authority for the proposition that any corporate involvement had to be noted on the bill of indictment. Moreover, whether or not Arnold acted on his own behalf or on behalf of his alleged corporation or both, the evidence established beyond a reasonable doubt that Arnold was the primary actor in obtaining the investors' money by his deceitful representations. See OCGA § 16-8-3. " 'An officer or an agent of a corporation cannot shield himself from criminal responsibility for his own acts on the ground that they were done in his official capacity as an officer or agent of such corporation.' [Cit.]" *Thompson v. State*, 85 Ga. App. 298, 299 (1) (69 SE2d 206) (1952), later cited in *Cross v. State*, 126 Ga. App. 346, 349 (3) (190 SE2d 561) (1972), a theft by deception case.

The claim that the indictment was fatally defective as compared with the proof, because it alleged that the $250,000 loan was in "lawful currency" when in fact the amount was given to Arnold in the

form of a check, is likewise without merit. Even if "lawful currency" is only cash, the discrepancy was not fatal. " 'Under *DePalma v. State*, 225 Ga. 465, 469 (169 SE2d 801) (1969), and *Dobbs v. State*, 235 Ga. 800 (3) (221 SE2d 576) (1976), "(n)ot every variance in proof from that alleged in the indictment is fatal." (Cit.) The crucial requirements are (1) that the accused be definitely informed as to the charges against him, so that he is able to present his defense, and (2) that he may be protected against another prosecution for the same offense. *DePalma*, supra. Unless the variance subjects defendant to one of these dangers it is not fatal.' [Cit.]" *Bartel v. State*, 202 Ga. App. 458 (1) (414 SE2d 689) (1992). See also *Harrell v. State*, 192 Ga. App. 876, 877 (1) (386 SE2d 676) (1989). As in *Bartel*, defendant Arnold was not subjected to such dangers inasmuch as the material allegations and proof corresponded.

(b) The State did not fail to prove venue in Muscogee County. Theft by deception (OCGA § 16-8-3) is considered to have been committed in any county in which the accused exercised control over the property which was the subject of the theft. OCGA § 16-8-11. The evidence was without dispute that Arnold's agent, Ledford, obtained the check for Arnold in Columbus at Arnold's direction and subjected it to Arnold's control.

(c) The contention that the State failed to show a required "benefit" to him personally is wholly unavailing. First, Arnold misconstrues *Robinson v. State*, 198 Ga. App. 431 (401 SE2d 621) (1991) and *Stewart v. State*, 142 Ga. App. 493 (236 SE2d 278) (1977), on which he relies. Neither case engrafts a "benefit" requirement into the crime of theft by deception as defined in OCGA § 16-8-3. In the respective cases, any "benefit" aspect is discussed in terms of the defendants' level of participation in the alleged crimes. Even if personal benefit were a requirement, the evidence showed that Arnold received ample personal benefit after deceitfully obtaining the $250,000.

The assertion that the investors relied on only a promise to do something in the future is likewise unavailing. The representation forming the basis of theft by deception must refer to a presently existing fact. *Harris v. State*, 141 Ga. App. 213, 214 (1) (233 SE2d 21) (1977). It did. Both prior to and at the closing, Arnold, orally and by documents, falsely represented to the investors that he presently owned the offered collateral. Moreover, the check was not handed over to Arnold's agent until the fraudulently signed security deed was delivered.

Any lack of diligence by the victims in failing to obtain a title examination of the proposed collateral is not a defense to the criminal charge. " '[T]he fact that the party alleged to have been defrauded did not exercise reasonable diligence in preventing the fraud affords no defense to the accused.' [Cit.]" *Suggs v. State*, 69 Ga. App. 383,

384, hn. 4 (25 SE2d 532) (1943) (decided under former Code 1933, §§ 26-3918; 26-7408; 26-7409; 26-7410).

The State proved the elements of theft by deception beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The court did not err in denying a directed verdict of acquittal.

2. In his third enumeration of error, Arnold contends that the court erred in failing to give his requested charge on the principle of "constructive notice" as set forth in *McElwaney v. MacDiarmid*, 131 Ga. 97 (62 SE 20) (1908), in that the victims had notice by virtue of the public records that he did not own the property.

It appears that the request to charge was merely oral rather than written. Generally, where there is no written request, it is not reversible error for the court to fail to give it. See *Bullock v. State*, 202 Ga. App. 65, 66 (1) (413 SE2d 219) (1991) and *Weathers v. State*, 198 Ga. App. 871, 872 (4) (403 SE2d 449) (1991). In any event, the principle articulated in Division 3 of *McElwaney*, a civil case, has no application in this criminal prosecution for theft by deception.

3. In his fourth enumeration of error, Arnold contends that the court erred in failing to charge the jury on the affirmative defenses to prosecution in OCGA § 16-8-10 even though he did not request such an instruction.

First, not only did Arnold not request such a charge, but neither did he object in any manner to the court's charge as given. In general, "where an omission to charge is involved, there is a requirement to request a charge and/or object to its omission or suffer a waiver." *Gaines v. State*, 177 Ga. App. 795, 799 (1) (341 SE2d 252) (1986), (physical precedent but later cited, e.g., in *Cole v. State*, 200 Ga. App. 318, 321 (4) (408 SE2d 438) (1991)).

Furthermore, there was no evidence of any of the affirmative defenses of OCGA § 16-8-10, so instruction on them was not appropriate.

4. In his fifth enumeration of error, Arnold contends that the court erred in refusing to charge the jury, pursuant to his oral request, on the elements of the offense of "cheating and swindling by false representations" as set forth in *Diamond v. State*, 52 Ga. App. 184 (182 SE 813) (1935) and *Chandler v. State*, 80 Ga. App. 550 (56 SE2d 794) (1949).

These cases were decided under former Code 1933, §§ 26-3918; 26-7408; 26-7409; 26-7410. OCGA § 16-8-3 evolved from the former cheating and swindling laws, but there are significant differences between them and the present theft by deception statute. See, e.g., *Harrell v. State*, supra at 877 (2), which determined that unlike the predecessor statutes, OCGA § 16-8-3 has no requirement of proof of

pecuniary loss.[2] The court properly charged instead the applicable provisions of the present law under which defendant was charged.

5. For the foregoing reasons, the court did not err in denying Arnold's amended motion for new trial, as contended in the first enumeration of error.

*Judgment affirmed. Cooper and Smith, JJ., concur.*

DECIDED NOVEMBER 10, 1993.

*Alan C. Manheim*, for appellant.

*Douglas C. Pullen, District Attorney, J. Gray Conger, Assistant District Attorney*, for appellee.

---

[2] On the other hand, the rule in *Suggs*, supra, still applies.