## A01A2474. MERRITT v. THE STATE.
### (564 SE2d 3)

RUFFIN, Judge.

Hope Merritt was indicted on three counts of felony theft by taking. After a bench trial on stipulated facts, the trial court found Merritt guilty on two of the counts.[1] Merritt appeals, asserting that the evidence was insufficient to support his convictions and that the trial court erred in denying both his motion to quash the indictment and his plea of former jeopardy. Finding the evidence sufficient to support Merritt's conviction on only one of the two counts, but no error in the trial court's denial of his motions, we affirm in part and reverse in part.

1. Viewed in a light most favorable to the trial court's judgment,[2] the stipulated facts[3] show that Merritt was an accountant for the two victims, Reginald Johnson and Jeffrey Brown, and he offered to invest money for them. Johnson began investing money through Merritt in 1989, when Merritt told Johnson that he would invest Johnson's money, along with money from other investors, in a jumbo certificate of deposit yielding 12 percent annual interest. Merritt informed Johnson that, because there was a group of investors, he would not receive an individual statement from the bank. From 1989 to 1995, Johnson gave Merritt approximately $194,865 to invest. In October 1995, Merritt sent Johnson a memorandum stating that Johnson's investment, with accrued interest, had matured to $314,852.38.

The next month, Johnson told Merritt he needed to withdraw the money from the investment. Merritt, however, failed to return phone calls or provide Johnson with specific information about when he would receive the funds. Finally, in September 1996, Merritt told Johnson that he had actually invested the money in a brake shoe manufacturing company. Merritt knew very little about the company, however, and, as evidence of the investment, he produced only a copy of a stock certificate that was issued to "Hope Merritt, Jr." on February 18, 1988.

---

[1] The court directed a verdict on the third count of theft by taking.

[2] See *Corsini v. State,* 238 Ga. App. 383 (1) (519 SE2d 39) (1999) (stating the standard of review for criminal bench trial).

[3] Inasmuch as the evidence concerning the third count of theft by taking, which did not result in conviction, is not at issue here, we do not address it in this opinion.

Although Merritt acknowledged that Johnson gave him money, Merritt claimed it was a loan. According to Merritt, he was experiencing cash flow problems, and Johnson loaned him the money so that Merritt could expand his business. Merritt contended that he spent the money on business expenses, and there was no agreement about when he was required to repay the loan. Merritt also acknowledged showing the stock certificate to Johnson in 1996, but claimed he was merely offering Johnson "an opportunity to get something back." According to Johnson, prior to the time he was shown the stock certificate in September 1996, he did not have any reason to believe that Merritt was appropriating the invested funds for his own use.

Merritt's other victim, Brown, invested $40,000 with Merritt between May 1995 and the end of November 1995. Merritt told Brown that the money was being invested in a real estate venture involving the purchase, development, and sale of land and would yield an eight percent return. Aside from two small payments from Merritt of approximately $1,200 and $1,500, Brown never again saw his invested money. As with Johnson's money, Merritt contended that Brown loaned him the funds, which he then used to pay business expenses. According to Merritt, "[a]ll of his losses (the borrowed money and the profits) were consumed by expenses between 1994 and November, 1995."

On February 4, 2000, a Fulton County grand jury indicted Merritt for theft by taking, alleging that he unlawfully appropriated "U. S. currency" belonging to Johnson and Brown.

(a) Merritt asserts that the State failed to prove that he was indicted within the statute of limitation. Georgia law requires the State to prosecute a felony theft by taking offense within four years after the crime is committed.[4] The crime of theft by taking occurs when a person, "being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated."[5] The four-year statute of limitation, however, does not include any period in which the crime is unknown.[6] "Thus, the key to determining when the statute of limitation begins to run is to find when the offender or offense became known. The State bears the burden of proof in this regard."[7] Whether the State has met this burden is a question for the factfinder.[8]

---

[4] See OCGA § 17-3-1 (c).

[5] OCGA § 16-8-2.

[6] See OCGA § 17-3-2 (2).

[7] (Citations and punctuation omitted.) *State v. Lowman*, 198 Ga. App. 8-9 (400 SE2d 373) (1990). See also *Tarver v. State*, 198 Ga. App. 634, 635 (402 SE2d 365) (1991).

[8] See *Hall v. State*, 241 Ga. App. 454, 462 (2) (525 SE2d 759) (1999).

The stipulated facts in this case show that Merritt admitted he exhausted Johnson's and Brown's money for personal expenses no later than November 1995. Thus, the statute of limitation began to run at that time, absent some evidence that Johnson or Brown did not actually know about the crimes.[9] Johnson unequivocally asserted that he did not know that anything was amiss with his money until at least September 1996, when Merritt presented him with the spurious stock certificate and claimed, for the first time, that he had invested the funds in a brake shoe company. Thus, because Merritt was indicted within four years of September 1996, the State met its burden of proving that its prosecution of that offense was timely.[10]

We reach a different conclusion concerning the charge that Merritt stole Brown's money. Again, the stipulated facts show that Merritt committed the offense no later than November 1995. But there is no evidence showing when Brown discovered the crime. Under these circumstances, the State did not meet its burden of proving that Merritt was indicted for stealing Brown's money within the statute of limitation, and the trial court clearly erred in finding otherwise. Accordingly, Merritt's conviction for stealing Brown's money must be reversed.[11]

(b) Merritt also asserts that the State failed to prove that he unlawfully appropriated "U. S. currency," as alleged in the indictment. According to Merritt, there was no evidence showing that Johnson gave him currency, and the stipulated facts merely showed that he gave him checks.[12] Even if "U. S. currency" means only cash, however, this discrepancy in proof was not fatal. In *Arnold v. State*[13] and *Bartel v. State*[14] we addressed the identical issue and ruled that

> not every variance in proof from that alleged in the indictment is fatal. The crucial requirements are (1) that the accused be definitely informed as to the charges against him, so that he is able to present his defense, and (2) that he may be protected against another prosecution for the same offense. Unless the variance subjects defendant to one of these dangers it is not fatal.[15]

---

[9] See *Beasley v. State*, 244 Ga. App. 836 (536 SE2d 825) (2000) (providing that statute requires actual knowledge).

[10] See *Hall*, supra.

[11] See *Lowman*, supra at 9-10.

[12] Inasmuch as Merritt's conviction for taking Brown's money is reversed, we consider this assertion only in regard to Johnson's money.

[13] 210 Ga. App. 843, 846-847 (1) (a) (437 SE2d 844) (1993).

[14] 202 Ga. App. 458-459 (1) (414 SE2d 689) (1992).

[15] (Citations and punctuation omitted.) *Arnold*, supra at 847. Accord *Bartel*, supra.

In this case, as in *Arnold* and *Bartel*, the defendant was not subject to such dangers, and the variance in proof was thus not fatal.

2. Merritt asserts that the trial court erred in denying his motion to quash the indictment because the indictment was not perfect in form. We disagree.

The record reveals that the case against Merritt was originally presented for indictment by the District Attorney of Fulton County, Paul L. Howard, Jr. In September 1998, however, Howard notified the trial court that, due to an interest or relationship associated with the case, his office should be disqualified. The trial court ordered the disqualification and reassigned the case for prosecution by the District Attorney for the Stone Mountain Judicial Circuit. After the reassignment, an Assistant District Attorney for the Stone Mountain Judicial Circuit, Maria Ashley, drew a new indictment. Because the case was still being indicted in Fulton County, Ashley used a Fulton County indictment form when she drafted the indictment. Ashley neglected, however, to remove Howard's name from the form. Merritt subsequently moved to quash the indictment, arguing that because Howard's name appeared on the indictment as the prosecuting authority after his office was disqualified, it was improper in form. The trial court denied the motion, and Merritt challenges that ruling on appeal.

Though we agree with Merritt that Howard's name should have been removed from the indictment, such imperfection does not warrant reversal. It is undisputed that neither Paul Howard nor his office participated in any way in preparing the indictment or in presenting the case to the grand jury. Considering that "the purpose of the indictment is to allow defendant to prepare his defense intelligently and to protect him from double jeopardy,"[16] we can discern no harm to Merritt under the circumstances here. Furthermore,

> [w]hen trial has been had before the appellate court reviews the merits of the motion to quash, where no prejudice to defendant has occurred though the indictment (or accusation or citation) is not perfect, reversal is a mere windfall to defendant and contributes nothing to the administration of justice. Convictions are no longer reversed because of minor and technical deficiencies which do not prejudice the accused. . . . Thus a defendant who was not misled to his prejudice by any imperfection in the indictment (or accusation or citation) cannot obtain reversal of his conviction on that ground.[17]

---

[16] (Punctuation omitted.) *State v. Forthe*, 237 Ga. App. 134, 137 (514 SE2d 890) (1999).

[17] (Punctuation omitted.) *Wade v. State*, 223 Ga. App. 222, 224 (477 SE2d 328) (1996). See also *Brooks v. State*, 207 Ga. App. 477, 478-479 (428 SE2d 357) (1993).

Finally, we disagree with Merritt that *Mack v. State*[18] requires a different result. In *Mack*, the issue was whether a district attorney had sufficient prior knowledge of other offenses for double jeopardy to attach to those offenses. We held that the fact that the district attorney's name appeared on the indictment charging the other offenses "conclusively establishe[d] his knowledge that [the other] prosecutions . . . for offenses arising from the same conduct were being brought simultaneously."[19] *Mack* did not address whether an indictment should be quashed because the wrong district attorney was inadvertently named on that indictment. Thus, *Mack* is inapposite and does not require reversal.

3. Finally, Merritt asserts that the trial court erred in denying his plea of former jeopardy. Merritt's entire argument, however, is devoid of any reference to a plea of former jeopardy. Instead, Merritt argues that the trial court violated his constitutional right to a speedy trial under *Barker v. Wingo*.[20] Thus, inasmuch as Merritt's asserted error is unsupported by argument or citation of authority, it is deemed abandoned.[21]

Furthermore, Merritt has not shown that the trial court erred in denying his motion to dismiss the charges because he was denied his constitutional right to a speedy trial. Under *Barker*, a court must balance four factors to determine whether a defendant's constitutional right to a speedy trial has been denied:

> (1) the length of the delay; (2) the reason for the delay and whether this is attributable to the defendant or the state; (3) the timeliness of the defendant's assertion of the right to a speedy trial; and (4) prejudice to the defendant. With regard to the prejudice factor the Court identified three interests the right to a speedy trial was designed to protect: (i) oppressive pre-trial incarceration; (ii) anxiety and concern of the accused; and (iii) the possibility the defense will be impaired. [The Supreme Court of Georgia] has held that in order to weight the prejudice factor in the defendant's favor, he or she must offer specific evidence that one or more of these interests apply.[22]

In this case, Merritt asserts that a delay of more than four years between the time his victim knew about the offense and the time of

---

[18] 249 Ga. App. 424 (547 SE2d 697) (2001).
[19] Id. at 427.
[20] 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972).
[21] See Court of Appeals Rule 27 (c) (2).
[22] (Footnotes omitted.) *Jackson v. State*, 272 Ga. 782, 783 (534 SE2d 796) (2000).

his trial was excessive. In determining whether Merritt was denied a speedy trial, however, we assess the pre-trial delay which *followed* his arrest or indictment.[23] The record reveals that Merritt was indicted on February 4, 2000, and found guilty by the court based on stipulated facts on May 15, 2001. The record does not disclose the reason for the delay, and there is no indication that Merritt ever demanded a speedy trial.

Moreover, Merritt has produced no evidence showing that he was prejudiced by the delay. Merritt was not incarcerated while he awaited trial, and he does not argue that he suffered from anxiety or other concerns while waiting to be tried. Instead, Merritt's sole contention is that the delay forced him to assert his right against self-incrimination during his deposition in a separate civil action pending against him in another county. We are aware of no authority, nor has Merritt cited any, showing that this incident is relevant in considering whether Merritt's defense in the criminal case was prejudiced.

In sum, Merritt has established only that approximately 15 months elapsed between the time he was indicted and his trial. Because Merritt did not show the reasons for the delay, that he demanded a speedy trial, or that he suffered any prejudice, the trial court did not err in denying his motion to dismiss the indictment.[24]

*Judgment affirmed in part and reversed in part. Johnson, P. J., and Ellington, J., concur.*

DECIDED FEBRUARY 19, 2002 —
RECONSIDERATION DENIED APRIL 9, 2002 — ▮▮▮▮▮

*Brian Steel*, for appellant.
*J. Tom Morgan, District Attorney, Thomas S. Clegg, Jeanne M. Canavan, Assistant District Attorneys*, for appellee.

---

[23] *Wooten v. State*, 262 Ga. 876, 878 (2) (426 SE2d 852) (1993).
[24] See *Jackson*, supra.