**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be**
**_physically received_ in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 9, 2013**

# In the Court of Appeals of Georgia

A13A0683. JANNUZZO v. THE STATE.

ANDREWS, Presiding Judge.

Paul Jannuzzo was found guilty by a jury of one count of theft by conversion in violation of OCGA § 16-8-4, and one count of violation of the Georgia Racketeer Influenced and Corrupt Organizations (RICO) Act in violation of OCGA § 16-14-1 et seq. Among other claims, Jannuzzo asserts that the State failed to carry its burden to prove that the charges were brought within the applicable statutes of limitation. Because we find that the State failed to carry this burden on either count of the indictment, we reverse both convictions.

The indictment was filed on June 12, 2009, and alleged in the RICO count that, while Jannuzzo was general counsel for Glock, Inc., he acted in violation of OCGA § 16-14-4 (a) and (c) by unlawfully conspiring with another Glock employee, Peter

Manown, to engage in a pattern of racketeering activity by which they unlawfully acquired and maintained, directly and indirectly, interest in and control of personal property, including money, belonging to Glock, Inc., its founder, Gaston Glock, and companies associated with Glock, Inc. The indictment alleged that there was a pattern of racketeering activity by theft and conversion of property, including money, by use of clone bank accounts and forged documents; that this activity occurred between August 28, 1991 and August 26, 2007; and that it consisted of various predicate offenses under OCGA § 16-14-3 (9) (A) as follows:

(1) that between February 12, 1999, and August 26, 2007, Jannuzzo committed theft by conversion of a LaFrance Specialties pistol owned by Glock, Inc. valued in excess of $500; (2) that while employed by Glock, Jannuzzo (in concert with Manown) unlawfully obtained $177,000, belonging to Glock, Inc., by fraudulent insurance billings; (3) that in or about April 1997, Jannuzzo (in concert with Manown) unlawfully obtained $98,633.80, belonging to Glock, Inc., Gaston Glock or associated companies, by use of a cloned account; (4) that on or about January 11, 2002, Jannuzzo (in concert with Manown) fraudulently created a fictitious document to facilitate an unapproved loan guarantee by a Glock associated company of a $3,400,000 loan; (5) that on or about June 4, 1998, Jannuzzo (in concert with

2

Manown) by use of forged documents unlawfully obtained an unapproved loan of $1,000,000 by Glock, Inc. or associated companies; (6) that on or about August 31, 2000, Jannuzzo unlawfully transferred $60,000, belonging to Glock, Inc. or associated companies, to his individual account in the Cayman Islands, and unlawfully kept $10,000 of these funds; (7) that in or about September 2001, Jannuzzo illegally converted $18,570.25, belonging to Glock, Inc. or associated companies, by transferring the funds to his Cayman Island account; (8) that in or about September 2001, Jannuzzo converted $16,000 belonging to Glock, Inc. or associated companies, by directing that those funds be used to pay his personal debt.[1]

The theft by conversion count sets forth the same offense alleged in the RICO count as a predicate offense – that between February 12, 1999, and August 26, 2007, Jannuzzo committed theft by conversion of a LaFrance Specialties pistol owned by Glock, Inc. valued in excess of $500.

The trial court denied Jannuzzo's pre-trial plea in bar asserting that the applicable statutes of limitation barred prosecution on the theft by conversion and RICO counts. Nevertheless, at trial the burden remained on the State to prove that the

---

[1] Other portions of the RICO count relating to alleged obstruction and false statements to police were struck by the trial court and removed from consideration by the jury.

charged offenses occurred within the applicable statutes of limitation, or, if an exception was alleged that would toll the running of the statute, to prove that the exception tolled the statute. *Jenkins v. State*, 278 Ga. 598, 604, n. 31 (604 SE2d 789) (2004); *Merritt v. State*, 254 Ga. App. 788, 789 (564 SE2d 3) (2002). "[C]riminal limitations statutes are to be liberally interpreted in favor of repose." *Sears v. State*, 182 Ga. App. 480, 482 (356 SE2d 72) (1987) (punctuation and citation omitted), overruled on other grounds, *Johnston v. State*, 213 Ga. App. 579 (445 SE2d 566) (1994). The running of a statute of limitation for a criminal offense is ordinarily not interrupted unless an exception tolls its operation. Id. "[E]xceptions will not be implied to statutes of limitation for criminal offenses, and . . . [a]ny exception to the limitation period must be construed narrowly and in a light most favorable to the accused." Id. (punctuation and citations omitted); *Womack v. State*, 260 Ga. 21, 23 (389 SE2d 240) (1990).

1. As to the felony theft by conversion count, OCGA § 17-3-1 (c) requires that prosecution for this offense "shall be commenced within four years after the commission of the crime. . . ." In the present case, however, the State alleged in the indictment that, because the accused and the crime were unknown to the State, the four-year statute of limitation was tolled under the exception set forth in OCGA § 17-

4

3-2 (2). The exception set forth in OCGA § 17-3-2 (2) provides that the limitation period is tolled while "[t]he person committing the crime is unknown or the crime is unknown." Under this exception, the statute of limitation is tolled until the victim has actual knowledge of the crime – what the victim actually knew. *State v. Campbell*, 295 Ga. App. 856, 857 (673 SE2d 336) (2009); *Beasley v. State*, 244 Ga. App. 836, 837-838 (536 SE2d 825) (2000). Constructive knowledge – what the victim should have known – does not extinguish the tolling period. *Campbell*, 295 Ga. App. at 857. For purposes of this exception, the actual knowledge of the victim is imputed to the State. Id.; *Womack v. State*, 260 Ga. at 22 (knowledge of the victim is the knowledge of the State); *State v. Lowman*, 198 Ga. App 8-9 (400 SE2d 373) (1990) (limitation period does not commence to run until the offense is known to the prosecutor or to the person injured by the offense). It follows that the four-year statute of limitation for the prosecution of this offense began to run on the date that the victim, Glock, Inc. (Glock), had actual knowledge of the offense. Because the indictment was filed on June 12, 2009, to prove that Jannuzzo was indicted for theft by conversion within the four-year limitation period, the State had the burden of producing evidence that Glock's first actual knowledge of the offense occurred within four years prior to that date – no earlier than June 13, 2005.

5

Under OCGA § 16-8-4, a person commits the offense of theft by conversion when he lawfully obtains property of another under an agreement or legal obligation to make a specified disposition of the property, and then knowingly converts the property to his own use in violation of the agreement or obligation. The indictment alleged that on February 12, 1999, while Glock employed Jannuzzo, Glock gave Jannuzzo temporary custody of a LaFrance pistol; that when Jannuzzo left employment with Glock on or about February 13, 2003, he did not return the pistol to Glock; that, after Jannuzzo left employment with Glock, he denied having possession of the pistol; and that, when Jannuzzo was later arrested on August 26, 2007, on an unrelated charge, the pistol was found in his possession. On these allegations, the indictment charged that Jannuzzo committed the offense of theft by conversion of the pistol between February 12, 1999, and August 26, 2007.

At trial, evidence showed that Glock owned guns made by Glock and other manufacturers, including the LaFrance pistol, and that Glock loaned or assigned these guns to various Glock employees to be used for business purposes for demonstration, display, and as sales samples. As required by federal Bureau of Alcohol, Tobacco and Firearm (ATF) regulation, Glock kept written records of the employees to whom the guns had been loaned showing when the gun was loaned and when the gun was

6

returned. Glock's general counsel at the time of the trial, Carlos Guevara, testified that: "As far as Glock requirements to comply to ATF regulations, we have to account for every single pistol, firearm in our possession." Guevara identified documents kept by Glock in compliance with ATF regulations which showed that the LaFrance pistol was purchased by Glock on August 20, 1997, loaned by Glock to Jannuzzo on November 3, 1997, returned by Jannuzzo to Glock on April 27, 1998, loaned by Glock to Jannuzzo on September 10, 1998, returned by Jannuzzo to Glock on September 15, 1998, and loaned by Glock to Jannuzzo on February 12, 1999. The Glock records showed that the pistol was not returned to Glock after it was loaned to Jannuzzo on February 12, 1999. Glock vice president of operations, James Mathis, part of whose job was to keep track of the loaned guns, testified that in 2001 he took an inventory of the non-Glock guns for the purpose of selling any that were no longer needed. Mathis identified the LaFrance pistol as one of the non-Glock guns, and spoke about the pistol to Jannuzzo, who told him that the pistol was not to be sold, "that one is mine." Jannuzzo left his employment with Glock in February 2003. Glock's former general counsel, Kevin Connor, testified that, within a couple of weeks after Jannuzzo left his employment with Glock in February 2003, Jannuzzo called him, told him he had a number of guns in his possession, including the

LaFrance pistol, and asked him to find out what the Glock records showed as to who had possession of those guns. Connor said that he told his superior at Glock, Robert Glock, about the conversation with Jannuzzo, and gave Mr. Glock a list of the guns that Jannuzzo said he had in his possession, including the LaFrance pistol. Conner testified that he was directed to take no further action on the matter. Contrary to the allegation in the indictment, no evidence showed that Jannuzzo ever denied having possession of the LaFrance pistol after he left his employment with Glock. Evidence showed that in September 2005, while Glock was in the process of complying with an ATF inspection, Glock's records still showed that the LaFrance pistol was in Jannuzzo's possession. At that point, Glock reported to the ATF and to the Smyrna Police Department that the LaFrance pistol was "lost or stolen." Finally, the State produced evidence that on August 26, 2007, while City of Atlanta police were at Jannuzzo's residence on an unrelated matter, the LaFrance pistol was found at the residence in Jannuzzo's possession.

The State produced evidence sufficient to establish Jannuzzo's theft by conversion of the LaFrance pistol by showing: (1) that Jannuzzo lawfully obtained the pistol owned by his employer, Glock, under an agreement that he could keep possession of and use the pistol only for purposes related to his employment, and

8

therefore only so long as he remained employed by Glock; and (2) that Jannuzzo violated this agreement and knowingly converted the pistol to his own use when he kept the pistol, and did not to return it to Glock, at the time he left his employment with Glock in February 2003. There is no evidence that could support a finding by the jury that the theft by conversion of the pistol occurred at a later time. In compliance with federal regulation, Glock kept written records of the whereabouts of every gun it owned and loaned, and the records showed that Glock knew the pistol remained in Jannuzzo's possession when he left Glock's employment in February 2003. Moreover, a couple of weeks after Jannuzzo left employment, Glock's general counsel received a call from Jannuzzo confirming that he still had the pistol. Construing the four-year limitation period in favor of repose, and construing the tolling provision narrowly and in favor of Jannuzzo, we find no evidence that could support a finding by the jury that Glock's actual knowledge of the theft by conversion occurred any later than February or March of 2003 – more than six years prior to the June 12, 2009 indictment. *Lee v. State*, 289 Ga. 95, 97 (709 SE2d 762) (2011). It follows that the State failed to carry its burden to prove that Jannuzzo was indicted on the theft by conversion charge within the four-year statute of limitation. Id.

9

2. As set forth in OCGA § 16-14-8, a five-year statute of limitation applies to the RICO count alleged in the indictment which, unless tolled, "runs from the last overt act during the existence of the conspiracy." *State v. Conzo*, 293 Ga. App. 72, 73 (666 SE2d 404) (2008). As set forth above, the RICO count of the indictment alleged that Jannuzzo was part of a conspiracy to engage in a pattern of racketeering activity that consisted of various predicate offenses, the last of which was theft by conversion of the LaFrance pistol, which the State alleged occurred between February 12, 1999, and August 26, 2007.[2] All of the remaining alleged predicate offenses were based on acts which occurred while Jannuzzo was employed by Glock – acts which the evidence showed occurred no later than Jannuzzo's departure from Glock in February 2003. The State argues there was also evidence supporting predicate offenses in the RICO count which showed that, after Jannuzzo left Glock's employment, he engaged in acts constituting obstruction of justice. But, as set forth

---

[2] Jannuzzo contends that theft by conversion of the pistol was not properly included as a predicate offense in the RICO count because it was a single isolated act not sufficiently interrelated to the other predicate offenses to be part of the alleged pattern of racketeering activity, as required by OCGA § 16-14-3 (8). We assume for purposes of this opinion that the theft by conversion offense was sufficiently interrelated with the other predicate offenses. See *Overton v. State*, 295 Ga. App. 223, 231-232 (671 SE2d 507) (2008); *Dorsey v. State*, 279 Ga. 534, 540 (615 SE2d 512) (2005).

in footnote 1, supra, the trial court struck the portions of the RICO count related to obstruction and removed them from consideration by the jury.

As in the separate theft by conversion count, the State alleged in the RICO count that the applicable limitation period was tolled under OCGA § 17-3-2 (2) on the theft by conversion predicate act because the accused and the crime were unknown to the State. Accordingly, the State contends (as it did on the separate theft by conversion count) that the June 12, 2009 indictment on the RICO charge was within the five-year limitation period because the limitation period was tolled until Glock acquired actual knowledge of the theft by conversion offense less than five years prior to the indictment. See Division 1, supra. But as we found in Division 1, supra, the evidence showed that the theft by conversion occurred no later than February 2003, and that Glock had actual knowledge of this offense (imputed to the State) no later than February or March of 2003 – more than six years prior to the indictment.

Where an exception is relied upon to toll the statute of limitation, it must be alleged in the indictment and proved. *Moss v. State*, 220 Ga. App. 150 (469 SE2d 325) (1996). The State specifically alleged that it was relying upon the exception in OCGA § 17-3-2 (2) to toll the limitation period with respect to the theft by

11

conversion predicate offense. With respect to the other predicate offenses, the State made no specific allegation in the indictment of reliance on OCGA § 17-3-2 (2). Nevertheless, the introductory paragraph of the RICO count contains a general allegation that the RICO offense occurred "between the 28th day of August, 1991, and the 26th day of August, 2007, the exact dates being unknown to the Grand Jury, as contemplated by O.C.G.A. § 17-3-2 (2)." Although not clear, this presumably was intended to allege that the exception in OCGA § 17-3-2 (2) tolled the limitation period with respect to other predicate offenses occurring during Jannuzzo's employment with Glock because the State lacked knowledge of the offenses. If so, we find that the State did not prove this exception. In fact, the State does not make this argument on appeal, and the record shows that Jannuzzo's co-conspirator at Glock, Peter Manown, who testified for the State at trial, confessed to Gaston Glock in October of 2003 that he and Jannuzzo had conspired to steal from Glock. Accordingly, evidence showed that the victims (and therefore the State) had actual knowledge of these offenses more than five years prior to the June 12, 2009 indictment, and the State produced no evidence or argument to the contrary. *Merritt*, 254 Ga. App. at 790 (State failed to produce evidence to carry its burden to prove that defendant was indicted within the applicable statute of limitation).

12

Because the State failed to carry its burden to prove that Jannuzzo was indicted on the theft by conversion or the RICO count within the applicable statutes of limitation, the convictions must be reversed.

*Judgment reversed. Dillard and McMillian, JJ., concur.*